# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUISE D. LOFTIS,<br><br>          Petitioner,<br><br>     v.<br><br>JAMES HILL,<br><br>          Respondent. | Case No.  1:23-cv-00002-JLT-SKO (HC)<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He is currently in custody of the California Department of Corrections and Rehabilitation ("CDCR") at the Richard J. Donovan Correctional Facility in San Diego, California.  He challenges a prison disciplinary hearing in which he was found guilty of resisting staff.  He claims his investigative employee provided ineffective assistance, he was denied witnesses and the presentation of evidence during the disciplinary hearing, and the evidence was insufficient to find him guilty. Respondent claims that Petitioner was afforded all the procedural and substantive due process rights he was entitled to, and contends the petition be denied.  The Court will recommend the petition be DENIED.

**I.      BACKGROUND**

On February 19, 2020, a disciplinary proceeding was held in which Petitioner was found guilty of a lesser included charge of resisting staff in violation of Cal. Code Regs., title 15, Sec.

1

1  3005(a).  (Doc. 1 at 32.)  Petitioner was assessed a 90-day loss of credits. (Doc. 1 at 33.)

2  Petitioner sought relief by filing appeals at all state administrative levels.  He was denied
3  relief at each level.  (Doc. 14 at 74-81.)

4  Petitioner then collaterally challenged the guilty finding in the state courts.  On January
5  11, 2022, Petitioner filed a habeas petition in the Solano County Superior Court.  (Doc. 14 at 14.)
6  The petition was transferred to the Kings County Superior Court. (Doc. 14 at 14.)  On April 25,
7  2022, the Kings County Superior Court denied the petition in a reasoned decision. (Doc. 14 at
8  84-89.)  On May 26, 2022, Petitioner filed a habeas petition in the California Court of Appeals,
9  Fifth Appellate District. (Doc. 14 at 91-156.)  On July 14, 2022, the petition was summarily
10 denied. (Doc. 14-1 at 2.)  On August 15, 2022, Petitioner filed a habeas petition in the California
11 Supreme Court.  (Doc. 14-1 at 4-76.)  On November 9, 2022, the petition was summarily denied.
12 (Doc. 14-1 at 78.)

13  On December 27, 2022, Petitioner filed the instant federal petition for writ of habeas
14 corpus.  (Doc. 1.)  On April 5, 2023, Respondent filed an answer to the petition.  (Doc. 14.)  On
15 May 19, 2023, Petitioner filed a reply to Respondent's answer.  (Doc. 17.)

16 **II.     DISCUSSION**

17        **A.     Jurisdiction**

18 Relief by way of a petition for writ of habeas corpus extends to a person in custody
19 pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or
20 treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
21 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as
22 guaranteed by the United States Constitution.  The challenged disciplinary proceeding occurred
23 at California State Prison in Corcoran, California, which is located within the jurisdiction of this
24 Court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

25 On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
26 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
27 enactment.  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th
28 Cir. 1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA

2

only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.  Factual Background[1]

On November 4, 2019, at approximately 1610 hours while conducting his assigned duties, Officer D. White observed Petitioner attempting to commit suicide by hanging.  White observed Petitioner with a sheet tied on the upper shelving unit of the cell wrapped around his neck applying downward force by bending his knees and taking his weight off his legs.  White immediately told Petitioner to take off the noose, but Petitioner refused to acknowledge the order.  White activated his personal alarm and yelled to floor staff, "We have an inmate hanging."  White again yelled to Petitioner to remove the noose from his neck, but Petitioner refused.  White unlocked the food port to the cell, unholstered and pointed his MK-9 Oleoresin Capsicum Spray toward Petitioner's facial area, yelled "OC," and delivered a single burst of the spray.  The spray did not have the desired effect due to Petitioner having covered the food port with a towel and mattress.  Petitioner pulled his mattress up covering the food port.  White discovered later that Petitioner had stacked two boxes against the mattress holding it in place against the food port, thus making it impossible for the O.C. spray to reach Petitioner.  Petitioner then covered the window of the cell making it impossible to see into the cell.

White waited for additional staff to arrive with extraction equipment so an emergency cell entry could be conducted.  While waiting, White attempted to communicate with Petitioner but was unsuccessful.  Once additional staff arrived, a cell extraction was conducted.  When deemed safe enough, Sergeant Herleman signaled the control booth officer to open the door.  Officer White entered the cell holding a shield and it was extremely dark due to all windows being covered up.  White then spotted Petitioner.  Petitioner had taken off the noose and assumed a bladed fighting stance.  White knocked the mattress over and quickly moved toward Petitioner with his shield.  Petitioner struck White around the shield with his right hand making contact with White's upper left shoulder.  White then knocked Petitioner to the ground using his shield

---

[1] The factual background is derived from the Rules Violation Report. (Doc. 14 at 25.)

1  and then held Petitioner to the ground by applying downward force with the shield.  Once on the
2  ground, Petitioner did not resist.  Officer Rocha then placed Petitioner in mechanical restraints.
3  Rocha and White slowly raised Petitioner to his feet and backed Petitioner out of the cell.  They
4  then relinquished control of the escort to Officers Hernandez and Acosta.

        **C.**      **Legal Standard of Review**

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Cullen v. Pinholster, 563 U.S. 170, 203 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings.  Davis v.

1  Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).
2  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the
3  petitioner's claims "resulted in a decision that was based on an unreasonable determination of the
4  facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539
5  U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's
6  factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable
7  among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-
8  1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

9  To determine whether habeas relief is available under § 2254(d), the federal court looks
10 to the last reasoned state court decision as the basis of the state court's decision. See Ylst v.
11 Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.
12 2004). "[A]lthough we independently review the record, we still defer to the state court's
13 ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

14 The prejudicial impact of any constitutional error is assessed by asking whether the error
15 had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.
16 Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)
17 (holding that the Brecht standard applies whether or not the state court recognized the error and
18 reviewed it for harmlessness).

19 **D.     Due Process in Prison Disciplinary Hearings**

20 Under the Fourteenth Amendment, no state shall deprive any person of life, liberty, or
21 property without due process of law. Prisoners retain their right to due process subject to the
22 restrictions imposed by the nature of the penal system. Wolff v. McDonnell, 418 U.S. 539, 556
23 (1974). A prisoner in a prison disciplinary hearing is not entitled to the full array of due process
24 rights that a defendant possesses in a criminal prosecution. Id. at 556. However, a prisoner who
25 is accused of serious rules violations and who may be deprived of his or her good-time credits is
26 entitled to certain minimum procedural protections. Id. at 571-71 n. 9. Nevertheless, a
27 prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.
28 Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, Mass. Corr. Inst.

v. Hill, 472 U.S. 445, 454-455 (1984)).

The process due in such a prison disciplinary hearing includes: (1) written notification of the charges; (2) at least a brief period of time after the notice to prepare for the hearing; (3) a written statement by the fact-finders as to the evidence relied on and reasons for the disciplinary action; and (4) the inmate facing the charges should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Wolff, 418 U.S. at 564, 566, 570.

In addition, a decision to revoke an inmate's good-time credit does not comport with minimum procedural due process requirements unless its underlying findings are supported by "some evidence." Hill, 472 U.S. at 454. In reviewing a decision for "some evidence," courts "are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." Id. at 455-56. The Ninth Circuit has further held that there must be "some indicia of reliability of the information that forms the basis for prison disciplinary actions." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (uncorroborated hearsay statement of confidential informant with no firsthand knowledge is not enough evidence to meet Hill standard.)

**E.     Analysis**

  1.    Investigative Employee

Petitioner first alleges that he received ineffective assistance from the investigative employee ("IE") assigned to assist in the investigation. He states the IE failed to question staff and inmates that had relevant information, failed to screen prospective witnesses, gather documentation, or complete a written report.

Petitioner raised this claim in his habeas petitions in the state courts. In the last reasoned decision, the Kings County Superior Court rejected the claim, finding that the IE "acted consistent within her statutory obligations by presenting the Petitioner's written defense and proposed questions to SHO Sahota for review and determination." (Doc. 14 at 86.) As noted by Respondent, the responsibilities of the Staff Assistant and of the Investigative Employee are set

1  forth in California statute.  See Cal. Code Regs., tit. 15, § 3318.  If an IE is assigned, that
2  individual "is designated to gather information for the senior hearing officer or disciplinary
3  hearing committee . . . ."  Cal. Code Regs., tit. 15, § 3318(a)(C).  The IE acts "as a representative
4  of the official who will conduct disciplinary hearing rather than as a representative of the
5  inmate." Cal. Code Regs., tit. 15, § 3318(a)(3).  Thus, the Kings County Superior Court
6  concluded that it was the IE's obligation "to gather relevant information for the Senior Hearing
7  Officer and it [was] for SHO Sahota to decide what evidence [was] relevant for SA/IE Horseman
8  to investigate on his behalf."  (Doc. 14 at 86.)  Because the IE's duties were owed to the SHO
9  and not the inmate, and the SHO in this case determined that the IE provided the evidence and
10 information the SHO determined relevant, Petitioner cannot claim the IE failed in her duties.

11       Furthermore, as Respondent correctly contends, the claim rests entirely on the
12 interpretation and application of state law.  It is well-settled that federal habeas relief is not
13 available to state prisoners challenging state law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991)
14 ("We have stated many times that federal habeas corpus relief does not lie for errors of state
15 law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of
16 state law are not cognizable in federal habeas corpus" proceedings).  Insofar as the state courts
17 determined that the IE acted consistent with state law, federal habeas relief is foreclosed.

18       In his reply, Petitioner contends that in being denied an investigative employee, he was
19 denied his right to call witnesses and present documentary evidence.  As previously noted, there
20 is no constitutional right to an investigative employee.  Due process is satisfied if Petitioner is
21 provided an opportunity to call witnesses and present documentary evidence.  Wolff, 418 U.S. at
22 564, 566, 570.  As discussed below, Petitioner was not denied this opportunity.

23            2.     Witnesses

24       Petitioner alleges he was denied his request to call witnesses.  He alleges witnesses were
25 crucial in his case, because it was his defense that he could not have battered White since he was
26 handcuffed before White entered the cell.  He also alleges that witnesses and photographs would
27 have described the injuries sustained by Petitioner which would have substantiated his claim that
28 he was battered, not White.

This claim was also rejected by the Kings County Superior Court in its denial of Petitioner's habeas petition. The superior court noted that Petitioner had submitted a document titled "Witness Questions/List" to the IE which contained questions Petitioner wanted to ask of potential witnesses. (Doc. 14 at 87.) The court determined that the SHO reasonably did not construe the list of questions submitted by Petitioner as a request to call witnesses. The court noted that at the top of the document, Petitioner wrote, "The following questions are posed to C/Os White, Rocha, Acosta, & Hernandez," followed by six questions for those officers. (Doc. 14 at 87.) Petitioner proceeded in the same way with other persons for whom he had questions. (Doc. 14 at 87.) Based on the text of the document, the court concluded that Petitioner did not make it unambiguously clear to the IE and SHO that he wanted those individuals to attend his hearing as witnesses. The SHO reviewed the questions submitted and determined that they were either irrelevant or addressed in the reports generated by staff. (Doc. 14 at 87.) Furthermore, the court noted that Petitioner could have cleared up the ambiguity with the document at the hearing, as he was given the opportunity to call witnesses at the hearing but did not clearly exercise that right. (Doc. 14 at 87.)

Prisoners have a limited right to call witnesses and to present documentary evidence, when doing so would not unduly threaten institutional safety and goals. Wolff, 418 U.S. at 563-66. As noted above, the state court determined that Petitioner's list of questions was not a request for witnesses. This conclusion was not unreasonable given the text of the document. In construing the document as a list of questions, the SHO reasonable determined that the questions were either irrelevant or were addressed by the staff reports.

Moreover, there is no evidence that Petitioner requested to call witnesses at the hearing. Rather, the state court found that Petitioner was afforded the opportunity to call witnesses but failed to exercise that right. Petitioner bears the burden of rebutting the presumption that this determination was correct by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Respondent is correct that Petitioner fails to meet his burden of demonstrating that the state court's decision was based on an unreasonable determination of the facts.

### 3. Documentary Evidence

In a related claim, Petitioner also contends that he was denied his request to produce documentary evidence in the form of 16 photographs taken after the incident, mental health records, and a medical injury report authored by RN Garza. The record does not support this claim. The 16 photographs were included in the RVR. Petitioner's prior mental health records were clearly irrelevant as to whether and how the incident occurred. Finally, the medical injury report was irrelevant to whether Petitioner committed the acts at issue. None of this evidence had any tendency to prove that Petitioner did not resist staff in numerous instances during the incident. Thus, the SHO reasonably determined that these articles of evidence were either already considered or irrelevant.

### 4. Evidence of Guilt

Finally, Petitioner contends that the evidence was insufficient to support the finding of guilt. He contends that the RVR should have been dismissed on mental health grounds as his conduct fell under Cal. Code Regs., tit. 15, § 3317.2(a)(4), "The behavior is determined to be an act of self-mutilation or attempted suicide." Citing Superintendent v. Hill, the state court applied the correct standard in rejecting the claim and determined that "some evidence" supported the guilty finding. (Doc. 14 at 87-88.) The only question for this Court is whether that determination was unreasonable. A review of the record reveals that the state court's determination was not unreasonable. Officer White's report stated that Petitioner resisted staff entry to his cell by blocking the food port with a towel, mattress and two boxes. White's report also stated that Petitioner assumed a bladed fighting stance when he entered the cell and struck him in the shoulder. Thus, there was at least some evidence supporting the hearing officer's finding that Petitioner was guilty of resisting staff.

Petitioner claims that his mental health records, photographs, and medical records would have proved that mental illness led to the charges. (Doc. 1 at 9.) However, the state court noted that Petitioner was not disciplined for attempting suicide, but for his conduct immediately thereafter. (Doc. 14 at 88.) The state court determined that § 3317.2(a)(4) was not applicable in these circumstances. This Court is bound by the state court's determination of state law.

Moreover, the state court noted that the SHO appeared to have taken the mental health records into account by finding Petitioner guilty of the lesser included charge of resisting staff rather than the more serious charge of battery. (Doc. 14 at 88.)  In his reply, Petitioner concedes that the claim is without merit.

For the foregoing reasons, the Court concludes that all due process requirements were met in this case, thus precluding any finding that habeas relief is justified. Wolff, 418 U.S. at 554, 556, 570.

### III. RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 31, 2023**               /s/ *Sheila K. Oberto*
                                      UNITED STATES MAGISTRATE JUDGE